Good morning, Your Honors. May it please the Court, Joel Goldblatt of Williams, Bax, and comes before you with the consolidation of three separate cases that were heard and appealed from the Administrative Law Judge's ruling upholding the City of Chicago's assessment in the Department of Revenue matter interpreting the employer head tax in the City of but even if it had been, the City would prevail because of Ruling No. 2, which the Department issued in 2005. It's our contention that the ordinance is not ambiguous, but the City should not have prevailed, and the reasons are that the ordinance never discusses the term under Illinois law, the general proposition is that separate corporate entities are distinct under the law and have their own existence. Nothing in the employer head tax ordinance discusses separate corporate entities as the taxpayer. What would be the purpose, then, for the definition of business in the ordinance? The purpose would be that there wouldn't be a loophole that would allow a taxpayer's business to be limited. You were ready for that question, weren't you? Yes. And in fact, that's, it looks like there's some sort of effort by the City to merge employer and business and sometimes talk about business and look to the definition of business when really it's the employer, I thought, that determines the number for that, to reach that 50 employee threshold, we have to look at the employer in a business, but the business itself can't determine who the employer is. Because they're seeking to make the same employer of different corporations, aren't they? That's correct. In fact, if you were to abide by their interpretation, you'd be ignoring the word employer. And as statutory construction rules are clear, you don't ignore wording in the ordinance. Let me ask you this, not that it makes any difference, but how much money is really at stake in this case? Well, the assessments for DTCT were $17,411. In total, all three? You represent all three, right? Yes, I do. Just shy of $100,000. $100,000? Okay. That's the difference between what was paid and what the Department claims is owed? Well, in fact, the tax wouldn't have been owed by any of these corporate entities but for the interpretation the City put. But aren't you also saying that it's from a date forward, that after 2005, this interpretation is valid? No, I'm not. This interpretation cannot stand whatsoever because what basically happened here was the Department of Revenue exceeded its power and started to legislate. They basically created a definition that exists under apportionment law for income taxes. What's the matter with borrowing by analogy, an argument that has traditionally been well accepted in the income tax field? Revenue rulings do that all the time. They do that in interpreting, but they don't add substantive provision. What's substantive about their interpretation of the definition of business in the ordinance? That's their job, to interpret the ordinance. That's why they're there. There's no question. That's why revenue rulings are issued because an ordinance occasionally creates a dispute between the tax collector and the tax payer about what the ordinance means. No question. So you have revenue rulings to clarify. This has been going on ever since there have been tax collectors at all levels, city, county, state, federal. Revenue rulings, they're the bane of tax payers. And, of course, they're actually very healthy for tax lawyers because you get to interpret them for your client. But to some extent, the 1997 ruling and the 2005 ruling must be reconcilable to each other. And if they are not, then you have to look elsewhere for the authority to have passed the 2005 tax ruling. Absolutely. And you're saying that there is no authority because the 1997 ruling makes it clear that ABC Corporation with a subsidiary, whatever the explanation or the example was, applies to these McDonald franchises. That's correct. The example was two sets of affiliated corporations, one with 150 employees, one with 100, and each controlled their own employees, so each had to file their own employer head tax. That's analogous here in the sense that the hearing officer or the department explained, reconciled the 1997 ruling. The hearing officer attempted to in his ruling. The way I look at it. I know. The way you look at it is exactly the opposite of the way he interpreted the 1997 rulings with respect to the 2005. The fact is he made an interpretation. Now, what's our standard of review for reviewing his interpretation of 1997 as opposed to 2005? Well, I think you have to look at the statute in its entirety. Does he get any deference at all? I don't believe so. Why not? Is an agency interpreting their own rules? Of course he gets deference. Because it's conflicting. It's conflicting rules that they put out. The bulletin and the 2005 ruling are conflicting. Well, I don't know any authority that says because there's different rulings that somehow they, that suddenly the standard of review for us is different. Well, the Illinois Consolidated Telephone Company versus ICC. Well, as you brought it up, page 23 of your brief, you cite the case, and this is what you said. Courts are only to give weight to an agency's interpretation of ambiguous statutes. You're never going to find that in the case you cite, and it simply isn't true. They're allowed to interpret their statutes that they administer. They don't have to be ambiguous. That's just a flat-out misstatement of the law, that the only time that we pay any deference to an administrative agency's ruling is when they are interpreting an ambiguity in the statute. That's not true at all. And it's unfair to say that because, you know, when I read that, I said, I'm familiar with that Illinois telephone case. That's a very famous case. And what I did is I went back and I read it. It doesn't say what you say it says. It does say that they have the right to interpret an ambiguity. But not only ambiguities. They're charged with interpreting the statute. But in this case, the city itself is now claiming that the ordinance was ambiguous, and therefore they are now reinterpreting it under their 2005 tax ruling, as opposed to the 1997 tax ruling. And I thought the hearing officer simply said, well, that example that's set out in the 1997 tax ruling simply doesn't apply to these McDonald franchisees without telling us why it doesn't apply. It seems to apply quite directly. Well, I would argue it does. And that's the way he sidesteps it. But the city is the one who's claiming that this statute is ambiguous, or the ordinance is ambiguous. Yes. And they're claiming that they can change their interpretation of the ordinance by virtue of this ambiguity from 1997 to 2005. But I'm unaware of any authority that says that an agency, even though it has the responsibility to interpret its own enacting ordinances or legislation, can change its interpretation in midstream without demonstrating where it comes from. In fact, after the fact, and ignoring the effective date of the ruling that they laid down in 2005. Well, you've already admitted that the effective date of the ruling is irrelevant because it wouldn't even be effective going forward from your perspective because it was a wrong interpretation of the ordinance to begin with. So whether it's retroactive or prospective only is irrelevant from your perspective. That's correct. So, you know, to say that they put down an effective date for the implementation of this particular ruling is irrelevant. But you are conceding that the city council could have changed the ordinance in any way they wanted to to support the 2005 tax ruling. And based on that change in the ordinance, the 2005 tax ruling would have an impact from that point forward. It's clear the city council, if they had passed. But they didn't. And the Department of Revenue, if they wanted to reinterpret what they had already interpreted in 1997, could have gone to the city council and said we need a change in the language of the ordinance to allow us to now use the unitary group business group concept that exists in the Illinois Income Tax Act and please change it for us. And then from that point on, we will treat all these McDonald franchisees as a single employer when they try to avoid the tax otherwise. That's a softball for you that he just articulated. I truly appreciate it. But basically what he's doing is that he's buying into your argument that there's a conflict, quote, between 97 and 2000. Well, I thought that's what the department itself was arguing. They said they were clarifying. Clarifying, all right. What was already in existence. Would you agree that as far as a unitary business concept goes, that the group of the three different owners of the franchise would amount to or could come within this definition? If that was under the ordinance drafted by the city council, yes. I'm just saying for our purposes that the traditional view of the unitary business, what is it, entity? Unitary business group. Group that the owners here. It was individuals who had the franchise with McDonald's, right? It was individuals who. Signed off on the agreement, but it was corporations that. That actually end up owning and running the franchise. All right, but would you agree that for the first, we'll say in 72, that those corporations would fit within the traditional interpretation of a unitary business group? Yes, I would. But you're not agreeing that it goes forward and, of course, it isn't really relevant, but at least you would agree that they would fit into this unitary business group, but you don't believe that the legislation ever supported that. It doesn't. It's not written that way, and it still isn't written that way. That's right, and it's not a reasonable interpretation in my mind, because if you look at what the city council did with the original employer expense tax ordinance, they refer to other statutes in the definition section of G. They could have easily referred to the unitary business group that was well settled under Illinois apportionment. What's wrong with an interpretation that simply says the definition as it existed in the ordinance business? It's just another way of defining a unitary business group. Because it doesn't come close to that. Let me interrupt before you answer that question. Even if you're the tax sovereign and you've got an administrative agency interpreting its ordinance as to what it means, you can't link the language from the definition in the ordinance business to unitary business group? No, because you're ignoring words in the ordinance to do that. Hugh, do you remember – I take it you're familiar with Caterpillar. Yes. And are you familiar with – recall the rationale for the concept of unitary business group? I believe – It was to avoid any constitutional question that might arise as to income earned in one state that might have been earned in another state. That's correct. Right. But there is no constitutional question that sort of mandates that a unitary business group concept be applied when the entire confines are the city of Chicago limits, because the motivation for this concept has nothing to do with businesses all running within the city of Chicago. That's another softball for you. I would argue the motivation is to justify the assessment. And in applying this new test that the department has taken, there's a real question of the constitutionality of that interpretation. And I would argue that it wouldn't be constitutional to, without notice, suddenly create a new definition and a formal assessment. You didn't raise that. No, we can't be going into that now. You didn't raise that before. Do you want to wrap it up? I'd like to leave now. You'll have a few minutes. Okay. Thank you. Good morning, and may it please the Court. I'm Suzanne Lose, representing the City of Chicago's Department and Director of Revenue. Lose? Yes. Ms. Lose, why don't we start with the 1997 tax ruling and the 2005 tax ruling. What changed between 1997 and 2005 other than the interpretation? Our position is that there was not a change. The bulletin and the ruling can be read consistently. What about the example of? It's in the 1992. Right. Example? 1997? 1997. Did I miss? The example in 1997. The example in 1997 versus the 2005 tax ruling. But why doesn't that 1997 example, the one that McDonald's is relying on, why doesn't that apply to the McDonald's owners? It does not apply because that example dealt with affiliates, but it did not say that all affiliates will always be treated separately. It specifically spoke to affiliates that. Give us the example as it is set out in the 1997 tax ruling. The 1997 tax ruling dealt with two affiliates that had, I don't remember the exact number of employees. It doesn't matter. But they had two different. One had 60, one had 150. Okay. And each affiliate controlled the work and the pay of the employees. Well, each had over the 50 anyway. Right. So I don't know what kind of a problem with the example. But assuming they were 150 and they needed to be, a situation more similar to what we have in this case, I would say the difference is this focus on the control of the work and the pay. Where does that control concept come from? Well, to start with, that is in the example itself of the bulletin, and then I'll back up and talk about the language. But in the example, there was an emphasis on the control. And the difference between that and the 2005 tax ruling is that the point of the unitary business group is that this separation breaks down and you really have centralized management, centralized control. So that is a difference that can be led consistently. In the example, do we know anything about the affiliates? Is there any further discussion about control or anything like that? No. I mean, couldn't you easily say that these were all affiliates too? If you used that vague term? You could use the vague term affiliates, but example two did not suggest that all affiliates will always be treated separately. It did not purport to address every, between the two examples, it did not purport to address every kind of corporate structure that could arise. In fact, right in example two is an invitation for business owners to contact the Department of Revenue and seek an opinion about their own specific detailed corporate structure and relationship. Were these interpretations, I mean, is this the interpretation that was being used prior to 2005, prior to 2004 rather when that investigator, was that the year when he started his investigation? In 2004, that's correct. Prior to that, were there specific examples of where the city was implementing this in the fashion that they chose to implement it for these McDonald franchises? Are there examples of this situation? Did the hearing officer indicate that? The record is silent about how the department dealt with other specific situations like this. Would that suggest that the hearing officer really didn't have any prior implementations such as this to back up his interpretation in 2005? I'm not sure I understand the question, but the record is. What I'm suggesting is there's nothing really in the record to suggest this interpretation had ever been used prior to the 2005 statement that now we're interpreting. To clarify the previous interpretations, we're clarifying it, that Unitary Business Group was always what was intended by the legislation. Right, I would say the 1997 bulletin isn't such a construction. Before 2005, I would say there is nothing indicating that the department did not construe it this way. And we know they were by 2004, by the time they undertook this investigation. I mean, what happened was the department became aware of situations that might have- How do we know that they were doing it before that? Or was it- I mean, doesn't that indicate that they began investigating to see if it wasn't- if, you know, corporations weren't paying the tax on, you know, different employees in different locations? Well, we don't know that- it is incorrect for the plaintiffs to say that the director of revenue or the department did not construe it this way before. This was an interpretation, and there's no reason to believe it's not a consistent interpretation. The 1997 ruling isn't that. But were there any other rulings that the director had relied on? I mean, you can find other- No, the director- Decisions where the individual hearing officer, you know, refers back to a previous interpretation along the same lines. We don't have that at all here. No, that is not in the- Let me ask you, as to one of the plaintiffs, let's use Loftin and Loftin, Management Incorporated as- using them as- in this example. What if they had opened up a hot dog stand and using the same accounting, the same- everything else that the McDonald's- different McDonald's use? Would you throw in the hot dog stand with the McDonald's? Well, I think that would be a question for the administrative law judge. I think that might depend on whether those are businesses in the same general line. What would decide that? What would decide that question for him? Would he look to the ordinance? He would look to- he could look to the ordinance. Right. He could look to the ordinance. Would the answer be in the ordinance? The answer would be- well, I can tell- here- it's difficult for me to say how the ALJ would analyze specific factors. But with that, let me turn to what- Well, I'm asking you just what are the rules here? I mean, it's easy to say McDonald's and McDonald's because those are two McDonald's. But what if the same- this same controlled corporation opens up a bookstore? And are you going to throw in the bookstore with the other McDonald's too? I think that's- Where is the line and what- how do you draw that line? That line is actually made pretty clear under the 2005 ruling. Well, then let's go back to Justice McBride's question. This all started in 2004 before the 2005 tax ruling. So what precipitated this investigator's action in 2004 without that 2005 tax ruling in hand? Well, the same- the 2005 ruling is an interpretation. The same interpretation will require the same result. Now, let me back up and talk about the plain language because obviously that is important to understanding this. Okay. And let me just start at the beginning with the basic requirement of the employer's expense tax ordinance, which is- requires employers with more than 50 employees to pay the tax. Just so it's clear, you did say that a bookstore wouldn't go in even though it's- But she didn't say that. Okay, what- A bookstore would not go in under the factors likely. Okay, I'm not the ALJ here. Is that close enough? You would look at- you have three factors. What if the control factors are still the same? Yeah. And you originally said it was a matter of control. The second factor is whether the entities are being operated in the same general line. I'm sorry. Where do you get that from? Common ownership or control. Business activities are in the same general line. I think there would be a good argument that a bookstore and a McDonald's are not in the same general line. Is that in the definition of business or is that in the employee- where do you get that? That was in the unitary business group, which I understood your question to be. But I would like to return to- That's the gloss on the original business. Right, but I would like- The business definition is- Back to the ordinance itself. All right. Okay. So the tax is on employers with 50 employees or more. And we know that the city council was drawing a line between large and small businesses. And do you think that the word business is key because it was not about drawing the line between large and small corporations. If that were what city council was targeting, that would be manipulated by- No one doubts that manipulation is going on here. No one doubts that. And the question is, who can respond to that manipulation? The Department of Revenue on its own? Or does the Department of Revenue have to go to the city council and say, because the language doesn't address that as it now stands. There's no question about that. The question is, can the Department of Revenue do this on its own? The city council is the one who can and did do this on its own here. Could I just go back to the- When we talk about the unitary business group concept and having a business along the same lines, that's part of that definition. You said we look to the language of the actual Chicago Municipal Code, right? I mean, isn't that- To understand how the 2005 ruling is an interpretation of the ordinance, I wanted to turn my attention to the language of the ordinance. Right. But what I wanted to say was, if we look at the language of the ordinance itself, you know, first the tax is imposed upon, you know, every employer. And then we look at what the definition of business is. And we look at employer. But where in any of that would we ever get to along the same lines? Where are we pulling that from? Okay. Well, we would start with, first of all, the emphasis on business, which I think is key. Because the ordinance groups employees together for counting who comes within the scope of the tax, not based on which corporation cuts the paycheck, but on who was hired in connection with the employer's business. That's a starting point. We have definitions for employer and also for business. Okay. For employer, that includes any person with employees in Chicago. And we also know from the general principles of ordinance construction and the ordinance that a person may include more than one. So we can start with the notion that employers can be comprised, and a person, of course, includes corporations and other legal entities. Sure. So we know that an employer can be made up of more than one entity. And we also know that the business definition tells us that an employer's business may be made up of independent entities. Where is that? The term shall include entities which are, are you saying subsidiary or independent? Yes. All right. Okay. Entities which are subsidiary or independent. And that's modified by the next clause, and I'll get to that in just a moment. But I do just want to pause just for a second on that first clause, because I think this clearly negates a reading that combining more than one entity is never allowed under the ordinance. I think it's clear that it is, and then we need to discuss when. How do you combine them? The ordinance itself gives us two clues about when you would combine them. One would be, as the plaintiff emphasized in Section 2030, it has to be a part of the employer's business. The entities really need to belong to the same employer. And we do have, and when you have more than one entity. So we look to the definition of employer to find out if that applies, as opposed to the business definition. We look to the definition of employer, and also to common understandings of the meaning of employer, and whether or not and when it can include multiple entities. Well, you indicated the multiple entities falls under that subsidiary or independent phrase. That shows us that City Council envisioned that sometime. Can you explain to me, if you have subsidiaries, if you have independents, what else is there? I mean, what other type of business entity exists if it's not a subsidiary or if it's not independent? I don't know that that phrase offers any help in trying to figure out what is really meant here. It includes everything. Either you're a subsidiary or you're independent. Well, then we'll turn to the next phrase. I think, for starters, it does tell us that City Council was talking about independent entities, at least on some occasions, are going to be combined for purposes of the tax, for adding up the employees. That will bring the employer within the tax. So you think independent businesses can be combined for purposes of tax, and you're relying on? On the definition of business and employer. You can't have a couple of the two as the position that the city is taking, because otherwise you would run into the problem of having business entities which would technically meet the definition of being taxable, but have different owners. It's impossible to make sense of the two without reading them together, right? You've got to read the two of them together. Here's a good example. And this goes to the issue of, this is a softball for you. He threw us a couple of softballs. I'm going to throw you a softball. The burden of proof that this particular revenue ruling is an inappropriate gloss on the statute and beyond the powers would really carry some weight if he who has the burden of proof to show it, not you, but the taxpayer who has that burden of proof, if he could have produced a few Wendy's restaurants and a few Burger King restaurants where they were being not taxed the way McDonald's restaurants are being taxed. I'm sure if he had evidence of that, he would have produced it for the hearing office. Right. But he didn't, did he? No. So there's really no way, unless he produces the evidence, there's no way of knowing whether or not the Department of Revenue has been doing this all along and McDonald's was just an anomaly. These McDonald's were an anomaly that had escaped taxation. Right. Because they had ignored previous behavior by the Department of Revenue. Right. I mean, I would add, of course, you need... Would you consider that a softball? I would. You would not just, I mean, it could be that, you know, the Wendy's restaurants that weren't taxed didn't pay the taxes, so you'd also need to know whether the Department was aware of it. But also, I think... But it wouldn't have been proven if he had produced evidence of that. It might have been provative, except that I don't think this question really turns on how the Department interpreted it earlier. I was trying to trick you, but I couldn't. Okay. Because as you alluded to earlier... How much commonality does there have to be? I can understand where if it's a husband and wife owns one McDonald's under Corporation A, they, the two of them, own a McDonald's restaurant under Corporation B, and they're identical. But what if you have three owners in McDonald's A, and then... No, we have one owner in McDonald's A, one owner in the same McDonald's, same owner in McDonald's B, but in McDonald's C, she is with another owner. Why should that other owner be put in with the other two McDonald's, which is the situation right here? Why shouldn't those two McDonald's with the same owner be grouped together and treat that other McDonald's with a different owner to break that link? And this is exactly why the 2005 ruling makes sense, because it requires common ownership is one of the factors. But you don't have common ownership in one of the cases. You have a woman owning one McDonald's, the same woman owning a second McDonald's, and then the woman and her son. And you're suggesting that maybe the relationship between the mother and the son is enough to give common ownership, but then how far do you carry that? Maybe it's a nephew? I mean, a son-in-law? Well, the ruling tells us how far to carry it, because common ownership in the case of corporations is the direct or indirect control of ownership of more than 50% of the outstanding voting stock, and Ms. Ojeda owns 50% of the three. Does that sort of information get disclosed to the city somehow? Well, the city investigates it and obtains the information. And then, of course, there was a hearing in this case. And there was that information in the record. Right. You know, it just seems like if it really should turn on that, then the department should have disclosure forms whenever licenses are issued, because these are individual licenses the city is issuing, and require that ownership information be disclosed so that they can determine that, whether or not there's common ownership and therefore should be treated as a single employer, as opposed to going in there and trying to investigate on an ad hoc basis who should be. And that may be what's done at the outset. I mean, before we go and gather up that information. All right. You can wrap up. But I also just want to clarify back to the point we were discussing just before that about whether or not the department's interpretation was consistent before. And I don't think the question turns on that, although there's no evidence or anything in the record to suggest the department didn't. Even if it did, I think the director would still be free to change in light of changed circumstances or new situations, problems that arose, to issue the 2005 ruling. And even if it had not dealt with this, or even if it were inconsistent, you know, that inconsistency would need to be explored to see if that's really what the ordinance meant. But it does not completely dilute that that could be an appropriate and reasonable interpretation of the ordinance. Now, you can start wrapping it up. But I do have one quick question. If the 2005 really wasn't a sea change, you have to wonder why it was necessary to begin with. If it didn't change anything, was it a form of giving notice to the owners? Because it really didn't, because the investigation started in 2004, and maybe notice should really, if that's what it means to do, should only apply henceforth after 2005. But you wonder why 2005 had to... Because the reason the department would issue the ruling at this time is because, of course, even in a lot of these investigations, it became aware of noncompliance. And that's when you... But you don't need that to comply. You don't need the 2005 ruling to force compliance because your position is that the ordinance itself gives the department the authority to force compliance without the 2005 ruling. The ordinance does do that. It did not contain this specific factor test, which the director appropriately interpreted the ordinance, and putting that out there does serve the purpose of ensuring future compliance, even if the ordinance already did require that. This is what administrative agencies do when they're enforcing and administering their ordinances. That seems reasonable. Sort of nips other cases in the bud if the director goes on record. Now, I don't think I... You need to wrap it up. I was talking about the definition of business, and I wanted to point out the modifier to that. You have one minute. Okay. It is modified by conducting operations for the benefit of others and not themselves. And so that's where you get this notion, I think, of control, or looking at what's really going on with independent entities. Are they really existing in their own bubble, making profits, putting it back into the corporation, paying their stockholders, or are they doing so to benefit someone else? And that's when you get the kind of arrangement like what we have here, where these individual McDonald's corporations weren't keeping the profits or distributing derivatives, but were funneling. There was a finding in the ALJ fund found in two of the cases that these were being funneled to management corporation in the forms of management fees and salaries. So that's where this notion of control that the director picked up off on. You have to wrap it up. At the end of the day, the text should be read also in light of its purpose. And must be construed, I think this is very important, to give meaning to all its terms. You'll need to wrap it up. Lessons, if I may. The plaintiffs offer no interpretation that gives meaning to all the words in the definition of business or employer, and therefore the ALJ's interpretation is correct and should be affirmed. Thank you. All right. Thank you. All right. Very short, Mr. Goldblatt. I think the key factor this Court should be aware of is that taxing statutes are to be strictly construed. First National Bank of Springfield versus Department of Revenue, and the Vance Material Company Inc. Department of Revenue case. We know the cases. We know the cases. And I think everything turns on that. Clearly, you have to look at who the tax is assessed to. It's the taxpayer. And that was clearly defined in the ordinance. Everything that comes after that by the Department of Revenue that tries to expand that, when it's clear and strictly construed in the ordinance, should be ignored. All right. Thank you very much.